

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7008 | **DATE** | 4/15/2002 |
| **CASE TITLE** | Schumacher vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [11-1] is denied and Defendant's motion for summary judgment [12-1] is granted and the Commissioner's decision finding Claimant not disabled is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | APR 16 2002 |
| | Notified counsel by telephone. | date docketed |
| | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | 4/15/2002 |
| DK | courtroom deputy's initials | date mailed notice |
| | | DK |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number

18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FREDERICK L. SCHUMACHER,    )
     )
        **Plaintiff,**    )
     )      **No. 01 C 7008**
     )
        **v.**    )
     )
JO ANNE B. BARNHART,    )     **Magistrate Judge Morton Denlow**
**Commissioner of Social Security,**    )
     )
        **Defendant.**    )

**DOCKETED**

APR 1 6 2002

## MEMORANDUM OPINION AND ORDER

This case comes before the Court for a review of the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying the Plaintiff, Frederick Schumacher ("Claimant" or "Schumacher"), disability insurance benefits ("DIB") under the Social Security Act ("SSA") 42 U.S.C. §§ 216(i) and 223, and supplemental security income ("SSI") under the SSA, 42 U.S.C. §§ 1602 and 1614(a)(3)(A). Schumacher claims to have been disabled since August 17, 1997, due primarily to chronic lower back pain, as well as hypertension, arthritis and an affective disorder.

Schumacher seeks judicial review of the Commissioner's final decision. The matter comes before this Court on cross-motions for summary judgement. The issues to be decided are: 1) whether Schumacher is entitled to benefits for a closed period between August 17, 1997 and August 17, 1998; 2) whether the Administrative Law Judge ("ALJ") sufficiently

developed the record with regard to the severity of Schumacher's alleged affective disorder; and 3) whether the ALJ sufficiently substantiated his findings on Schumacher's credibility. For the reasons set forth below, the Court denies Claimant's motion for summary judgment and grants Defendant's motion for summary judgment, and affirms the decision of the ALJ.

## I. PROCEDURAL BACKGROUND

Schumacher filed his application for Title II DIB and Title XVI SSI on June 26, 1998, alleging a disability as of August 17, 1997, due to back pain, arthritis, a bone spur and a cyst. (R. 66-71). Schumacher's application was denied on October 15, 1998, because the Social Security Administration determined that while Schumacher was unable to perform his previous job, he was still able to perform medium work and therefore was not disabled. (R. 29-32). Schumacher filed a request for reconsideration on October 19, 1998 (R. 33), which was subsequently denied on November 20, 1998, for substantially the same reasons. (R. 34-36). Thereafter, Schumacher requested a hearing before an ALJ. (R. 37). On May 7, 1999, a hearing was held and Schumacher appeared without counsel and testified before ALJ Michael R. McGuire. (R. 186-202).

In his May 17, 1999 decision, ALJ McGuire found the Claimant was not disabled because Claimant was able to perform medium level work even though he was unable to perform his past relevant work. (R. 14-21). Schumacher then filed a timely request for review of the ALJ's finding with the Social Security Administration's Appeals Council. (R. 9). On July 6, 2001, the Appeals Council denied Schumacher's request for review, thereby

making the ALJ's decision the final determination of the Commissioner. (R. 6-7). Claimant then filed this action requesting judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provide that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." An ALJ's decision becomes the Commissioners final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. of Health & Human Serv.*, 983 F.2d 815, 816 (7th Cir. 1993). A reviewing court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching its decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Zacarias*, 502 U.S. 478, 481 n.1

3

(1992). The SSA gives a court the power to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

## III. ESTABLISHING A DISABILITY

In order to be entitled to DIB under Title II of the SSA the claimant must establish a "disability" under the Act. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999). The same is true to qualify for SSI under Title XVI of the SSA. *Zurawski v, Halter*, 245 F.3d 881, 885 (7th Cir. 1997). To establish a "disability" the claimant must show he is suffering from a medically determinable physical or mental impairment which can be expected to last for at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). Additionally, an individual shall be considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. § 1382c(a)(3)(B). This inability to engage in substantial gainful work must itself last, or be expected to last, for at least twelve months. *Barnhart v. Walton*, No. 00-1937, 2002 WL 459209, at *2 (U.S. Mar. 27, 2002).

The Social Security Regulations provide a five-step process to determine whether a claimant has established a "disability." 20 C.F.R. § 404.1520(a). The process is sequential; if the ALJ finds that the claimant is not disabled at any step in the process, the analysis ends.

4

*Id.* In the first step, the ALJ considers whether the claimant is working and whether such work is "substantial gainful activity." § 404.1520(b). If the claimant is working, the ALJ will find he is not disabled irrespective of medical condition, age, education, and work experience. *Id.*

If the claimant is not working, the ALJ will address step two: whether the claimant has an impairment or combination of impairments that is "severe." § 404.1520(c). A "severe" impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* Basic work activities include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple work instructions, and using judgment. § 404.1520(b). The ALJ is to consider the combined effect of multiple impairments "without regard to whether any [single] impairment, if considered separately, would be of sufficient severity." § 404.1523; 42 U.S.C. § 423(d)(2)(B). If the ALJ finds the claimant does not have a severe impairment, the claimant is found not to be disabled and the sequential analysis ends. 20 C.F.R. § 404.1520(b).

If the ALJ finds that the claimant's impairment is severe, the ALJ considers step three: whether the sever impairments meets any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 404.1520(c). If the claimant's impairment meets or equals any impairment listed in the regulations, the ALJ will find the claimant disabled.

If the impairment does not meet any listed impairment, the ALJ moves to step four,

which involves a consideration of the Claimant's "residual functional capacity" and the "physical and mental demands" of the past relevant work experience. § 404.1520(e). A claimant's residual functional capacity ("RFC") is what the person is able to do in spite of his or her limitations. § 404.1545. If the claimant is still able to perform work that he had performed in the past, the ALJ will find that the claimant is not disabled. § 404.1520(e).

If the claimant's impairment is so severe that he is unable to perform past relevant work, the burden shifts to the Commissioner in step five to show that considering his age, education, past work experience, and RFC, the claimant is capable of performing other work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *Brewer v. Chater*, 103 F.3d at 1390.

### IV. THE COMMISSIONER'S DECISION SHOULD BE AFFIRMED.

Claimant raises three issues on appeal. First, Claimant argues the ALJ did not fully consider or develop the record in order to grant DIB for a closed period from August 17, 1997 to August 17, 1998. Second, Claimant argues the ALJ failed to fully develop the record with regard to his anxiety. Third, Claimant contends the ALJ's determination on his credibility was legally insufficient because the ALJ made two inconsistent findings on credibility.

### A.     THE ALJ PROPERLY APPLIED THE FIVE-STEP SEQUENTIAL ANALYSIS.

Schumacher was born on April 2, 1956, and he was 43 years old at the time of the hearing. (R. 38). He is a high school graduate. (R. 70). Schumacher worked as a fleet service worker for American Airlines for eleven years from July 14, 1986 to January 3, 1998.

*Id.* As a fleet service worker he loaded and unloaded baggage and cargo, and helped clean the aircraft. (R. 193). He initially ceased working on July 10, 1997, due to lower back pain which had become increasingly aggravated by the strenuous lifting requirements of the job. (R. 104). Schumacher subsequently made an unsuccessful attempt to go back to work for American Airlines on November 24, 1997, but again went on medical leave on January 3, 1998. (R. 62). He has not worked since then. (R. 194). Over time, Schumacher has also complained of anxiety (R. 96), arthritis (R. 66), high blood pressure (R. 195), a spermatocele (R.88, 99), and recurrent drug and alcohol problems. (R. 133, 165).

The ALJ determined that while Schumacher was unable to return to work at his former position, he did not qualify as disabled because he was still able to engage in other work which exists in significant numbers in the national economy. (R. 15). In the first step of the sequential analysis, the ALJ noted that Schumacher's return to work after the alleged onset date may have constituted substantial gainful activity, thereby ruling out a finding of disability. *Id.* However, the ALJ decided to move on in the analysis. *Id.* At the second step, the ALJ found that Schumacher's back problems alone were "severe". (R.15-16). At the third step, the ALJ found that Schumacher's back condition was neither listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, nor equivalent in severity to the criteria of any listed impairment. (R. 16). He further found Schumacher's affective disorder was not severe because it presented only "slight" burdens to social functioning and performing daily activities, and therefore did not meet the "B" criteria under Listing 14.01. (R. 17-18).

7

The ALJ went on to make a determination as to Schumacher's RFC in step four, taking into account the diagnoses of treating physicians, the Functional Capacity Evaluation Report, and the hearing testimony. (R. 16-18). The ALJ determined that Schumacher was unable to perform the heavy lifting required in his former position with American Airlines. (R. 18). However, the ALJ further determined that Schumacher retained the functional capacity to perform light to medium level work. *Id.*

Finally, the ALJ found that the Social Security Administration had met its burden of showing significant work existed in the national economy for Schumacher, considering his age, education, work experience, and residual functional capacity. (R. 18-19). The ALJ made this determination by applying the "Grid Rules" of 20 C.F.R. Part 404, Subpart P, Appendix 2, and by noting that Claimant had already made arrangements to go back to work for American Airlines in a light to medium level work capacity. *Id.* In conclusion, the ALJ found Schumacher was not "disabled" within the meaning of the SSA, and was therefore ineligible for DIB or SSI. (R. 19).

## B. THE ALJ'S DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Schumacher's impairments were thoroughly chronicled by his general practitioner, Dr. Michael McDonnell, and other evaluating physicians. As a result, the record amply supports the ALJ's determination.

### 1. Treating Physicians' Reports and Evaluations.

Dr. McDonnell reported that Schumacher was first unable to work due to lower back

pain on July 10, 1997. (R. 104). On October 7, 1997, Dr. Dirk Nelson conducted an orthopedic evaluation. (R. 83-84). Dr. Nelson diagnosed Schumacher with degenerative disc disease and discogenic low back pain syndrome. *Id.* However, Dr. Nelson opined that Schumacher "clearly should be able to perform some light or medium level activities with some restrictions on bending and lifting." (R. 84). Dr. Nelson advised Schumacher to come in for a follow-up in two weeks, but he never returned. (R. 83-84). Schumacher was thereafter released to work on light duty on November 13, 1997, and was released to work on full duty one week later on November 20. (R. 104). Dr. McDonnell reported that Claimant had recovered from his back pain, but there would be recurrences. *Id.*

On January 29, 1998, after Schumacher's failed attempt to return to work (R. 62), Dr. McDonnell reported that Schumacher had chronic lower back pain. (R. 106). He further opined that Schumacher would be unable to work in his former position because of the repeated heavy lifting in tight spaces and awkward positions. (R. 106). However, he also reported that Schumacher was able to perform some kinds of work. *Id.*

On March 12, 1998, Dr. McDonnell filled out a Disability Claim on Schumacher's behalf. (R. 96-97). Dr. McDonnell noted that Schumacher was suffering from lower back pain and anxiety. (R. 96). He specifically noted that the anxiety presented "slight limitations" to Schumacher's ability to function in stressful situations and engage in interpersonal relationships. *Id.* The Disability Claim posed the question, "What stress factors or problems with interpersonal skills have affected patient's ability to perform the duties of his or her job?"

*Id.* Dr. McDonnell did not identify any such factors or problems. *Id.* In his physician's notes, Dr. McDonnell reported that the anxiety was due to Schumacher's stress in dealing with his girlfriend and her family. (R. 102).

Dr. McDonnell went on to evaluate Schumacher's physical capabilities. (R.97). He noted that Schumacher could sit, stand or walk intermittently for 8 hours per day. *Id.* He was also able to perform basic bodily maneuvers and manual operations normally—except for twisting, bending and stooping. *Id.* He further noted that Schumacher was able to lift up to 100 lbs. occasionally, and up to 20 lbs. frequently. *Id.* Dr. McDonnell concluded that Schumacher was able to work a total of 8 hours per day. *Id.*

On August 6, 1998, Dr. McDonnell completed an Arthritic Report (R. 89-91) which indicated that Schumacher was capable of normal ambulation and manual operations, and that "he is able to work." (R. 91). The basis for that assessment was apparently Dr. McDonnell's April 28, 1998 examination of Schumacher, as that was listed as the most recent examination performed. (R. 90). Dr. McDonnell also completed a Cardiac Report concerning Schumacher's hypertension on October 28, 1998. (R. 141-45). Dr. McDonnell indicated that no restrictions had been placed on Schumacher's ability to engage in physical activity (R. 143), and that he was able to perform activities of daily living. (R. 144).

## 2. Functional Capacity Evaluation Reports and Other Documents.

Two separate Functional Capacity Evaluations were performed on Schumacher. The first report was prepared by Kathleen Raven on behalf of American Airlines on September

21, 1998. (R. 135-39). The report found that Schumacher was capable of working at a heavy work level, lifting up to 80 lbs. to shoulder level. (R. 136). However, the evaluation also reported moderately decreased tolerances for crouching, squatting, and climbing stairs and ladders. *Id.* The evaluation went on to recommend proper use of body mechanics when stooping or twisting. (R. 137). Finally, the report indicated that Schumacher had complained of moderate back pain during the evaluation, and that these complaints were consistent with the pain mannerisms observed by the evaluators. *Id.*

The second evaluation was performed by Dr. William Conroy on September 23, 1998. (R. 146-153). Dr. Conroy found that Schumacher could lift up to 50 lbs. occasionally, and 25 lbs. frequently. (R. 147). He further found that Schumacher could sit, stand, or walk for a total of about six hours in an eight-hour workday. *Id.*

In addition, two Disability Determination and Transmittal forms were completed at the behest of the Social Security Administration, the first was by Dr. William Conroy on October 8, 1998 (R. 27), and the second by Dr. Victoria J. Dow on November 13, 1998. (R. 28). Both physicians concluded that Schumacher was not disabled through the date of determination. (R. 27, 28).

Lastly, on July 22, 1998, Schumacher completed a Disability Report (R. 66-71), in which he complained of arthritis, lower back pain, a bone spur and a cyst.[1] (R. 66). He

---

[1] Schumacher was referred to Dr. John J. Cudecki after complaining of testicular pain. (R. 99). On March 27, 1998, Dr. Cudecki examined Schumacher and found a small right spermatocele (harmless cyst). (R. 88).

reported specifically that he "could not do normal job." *Id.*

### 3. Administrative Hearing Testimony.

After the Social Security Administration twice denied benefits, an administrative hearing was held before ALJ Michael McGuire. (R. 186-202). There, Schumacher testified that he was kept from working due to lower back pain which was constantly present in moderation, but became severe after engaging in strenuous activity or heavy lifting. (R. 195-97). For instance, he had recently spent four hours hauling wood to his house and had thereby aggravated his back. (R. 196). He further testified that he could lift 40 to 50 lbs. on good days–meaning about 20 days in a month–but only 20 to 30 lbs. on bad days. (R. 197-98).

Schumacher further testified that all of his other problems had been resolved, particularly the period of anxiety and depression he had recently experienced and his bout with alcoholism. (R. 198). He ascribed his depression to the fact that he was feeling lonely, and to problems coping with the aging process and his newfound limitations in life. (R. 198, 200-01). He specifically mentioned that he had tried to commit suicide on April 4, 1998, and experienced an anxiety attack on May 28, 1998. (R. 200-01). However, with the help of neighborhood friends and a local church, he had been able to conquer his demons. (R. 198).

Finally, Schumacher testified that American Airlines had recently instituted permanent medical restrictions on him, and was in the process of finding a new position for him within those restrictions.[2] (R. 199-200). He expressed confidence and enthusiasm at the prospect

---

[2] The record contains a letter from American Airlines confirming this. (R. 171).

of returning to work. *Id.*

In summary, the record contains numerous medical assessments that, although suffering an impairment which prevents him from performing the heavy lifting of his former position, Schumacher is still able to perform light to medium level work. On the other hand, there is not a single medical report that stated he was unable to perform substantial gainful work of any kind. Moreover, his testimony at the hearing was substantially consistent with the medical record. Indeed, after describing the limitations that his lower back pain imposes on him, he went on to describe with confidence and enthusiasm his plans to return to work for American Airlines in a light to medium level work position. The ALJ's determination that Claimant can engage in light to medium level work should therefore stand.

## C. THE ALJ ADEQUATELY DEVELOPED THE RECORD AS TO THE CLOSED PERIOD FROM AUGUST 17, 1997, TO AUGUST 17, 1998.

Contrary to Claimant's contention that the ALJ did not consider the possibility of a closed period of disability, the ALJ made a specific finding that "[t]he claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision." (R. 20). This finding was supported by substantial evidence in the medical record. In finding that Schumacher had sufficient RFC to engage in medium level work, the ALJ specifically cited to the Arthritic Report of Dr. McDonnell. (R. 16). That report, which was based on the physician's April 28, 1998, examination of Claimant (R. 90), concluded that Schumacher retained the ability to work. (R. 91). Other evidence in the record includes the report of Dr. Nelson, who concluded that Schumacher retained the ability to perform light or

medium level work after the orthopedic evaluation he conducted on October 7, 1997. (R. 83-84). In addition, Dr. McDonnell filed reports on Schumacher's condition on January 29, 1998, and March 12, 1998, both of which indicated that Schumacher was able to perform at least some kinds of work. (R. 97, 106). Finally, Schumacher was diagnosed with degenerative disc disease in L1 and L2 and discogenic low back pain syndrome by Dr. Nelson on October 7, 1997. (R. 83). Similarly, Dr. Moiduddin diagnosed Schumacher with chronic low back pain syndrome and degenerative joint disease in L1 and L2 on September 9, 1998. (R. 133). This clearly supports the inference that Schumacher's underlying physical ailment had not changed over time.

This case is clearly distinguishable from *Brown v. Massanari*, 167 F. Supp. 1015 (N.D. Ill. 2001). In that case, the reviewing district court reversed and remanded because the ALJ had not sufficiently considered whether to provide DIB for a closed period. *Id.* at 1021. The claimant in that case suffered back and leg injuries in an automobile accident which required rehabilitative surgery and a prolonged period of recuperation. *Id.* at 1018. The court found that the ALJ had relied almost exclusively on the report of a physician whose examination had taken place after the claimant's recuperation, thereby failing to fully consider evidence that the claimant's condition had changed significantly over time. *Id.* at 1020-21. As a result, the court found that the ALJ's decision to deny DIB was not supported by substantial evidence. *Id.* at 1020. In the present case, there is substantial evidence from Claimant's treating physician to support a finding that the Claimant's back problem, although intermittent in

nature, has not materially changed over time. The contemporaneous evaluations of Claimant's treating physician fully support the ALJ's conclusion.

## D. THE ALJ ADEQUATELY DEVELOPED THE RECORD CONCERNING THE PLAINTIFF'S ALLEGED AFFECTIVE DISORDER.

Claimant also argues that the ALJ failed to adequately develop the record with regard to his affective disorder, particularly during the closed period addressed above. Specifically, Claimant argues that the ALJ did not ask sufficiently probing questions concerning his former mental state, nor did the ALJ attempt to acquire the psychiatric hospitalization records from Palos Hills Medical Center or any of the counselor's treatment notes.[3]

This argument implicates the principles of review established in *Binion v. Shalala*, 13 F.3d 243, 245-46 (7th Cir. 1994), which requires a claimant to make a particularized showing of prejudice due to evidentiary gaps. In declining to remand on the basis of an insufficiently developed record, the *Binion* Court wrote, "Claimant has not pointed to any specific facts that were not brought out during the hearing nor has she provided any new medical evidence. Mere conjecture or speculation that additional evidence might have been obtained in the case

---

[3]With regard to the psychiatric records, Claimant further contends that it was not his responsibility to proffer these records because they are costly and 20 C.F.R. § 404.1514 entitles him to have the Social Security Administration pay for obtaining a copy. (Pl. Brief 8 n.10). While 20 C.F.R. § 404.1514 does mandate that the Claimant need not have paid for the psychiatric documents, it does not mandate that he need not have asked for the ALJ or the Social Security Administration to obtain them. Indeed, the statute explicitly informs claimants that "You are responsible for providing [specific medical] evidence." *Id.* In this case, the ALJ specifically offered to obtain any medical records that Claimant wished to have included in the proceeding. (R. 189). He also asked Claimant if there was anything further he wished to state for the record. (R. 201).

is insufficient to warrant a remand." *Id.* at 246; *accord Nelson v. Apfel*, 131 F.3d 1228, 1235-36 (7th Cir. 1997). Claimant has cited no facts that were omitted from the ALJ's analysis, nor has he established that any such omissions have prejudiced his claim.[4] He has merely invited speculation as to what he might have said at the hearing and what the psychiatric documents might contain. This is insufficient to meet the *Binion* standard of a particularized showing of prejudice.

Furthermore, the ALJ's finding that the affective disorder, in combination with the back pain, did not constitute a "disability" within the meaning of the SSA is supported by substantial evidence in the medical record. The ALJ found that Schumacher's affective disorder was not severe because the medical evidence suggested that he only had "slight" difficulties in maintaining normal daily activities and social functioning, and that he "seldom" displayed deficiencies of concentration, persistence or pace. (R. 18). These findings are closely echoed by the contemporaneous report of Dr. McDonnell on March 12, 1998, which states that Schumacher's anxiety presented only slight limitations to engaging in stress

---

[4]At the time of oral argument, Claimant proffered a new evaluation by Dr. McDonnell which reported that he was not able to perform work of any kind because of the combination of his lower back pain and affective disorder. While 20 U.S.C. § 405(g) does provide for the admissibility of new evidence, that evidence must be new and material. *Perkins v. Charter*, 107 F.3d 1290, 1296 (7th Cir. 1997). In that regard, "new" means not "available to the claimant at the time of the administrative proceeding." *Id.* And "material" means that there is a reasonable probability that the Commissioner would have reached a different result if he had considered it. *Id.* The evaluation form here was neither new nor material. First, the information was easily accessible to Claimant, who did in fact have Dr. McDonnell fill out numerous forms on his behalf. Second, the evaluation itself is flatly contradicted by Dr. McDonnell's contemporaneous reports, and would therefore not be reasonably likely to change the Commissioner's decision.

16

situations and interpersonal relationships, and which did not list any factors of that anxiety which affected Schumacher's ability to perform his job. (R. 96). After assessing aspects of Schumacher's physical capabilities and limitations, he went on to conclude that Schumacher was able to work eight hours per day. (R. 97).

Claimant points out that Dr. McDonnell did not in fact advise him to return to work, but suggested physical therapy and psychological counseling. *Id.* However, this is not surprising. Dr. McDonnell knew Schumacher's work involved heavy lifting in tight spaces, and had previously diagnosed his back problem as chronic. (R. 106). The logical inference is that Dr. McDonnell was hesitant in releasing Claimant to return to work in his former position, not that he believed all work was unadvisable.

Claimant further contends that the ALJ's assessment of his affective disorder must be inaccurate given that he was briefly hospitalized in the psychiatric ward of Palos Hills Medical Center for suicidal ideation, and allegedly attempted suicide on April 4 and had a panic attack on May 28, 1998. (R. 93, 200). However, even if this were the case, the ALJ's ultimate determination is still supported by substantial evidence because the medical record indicates that Schumacher's depression did not last the 12 months required to constitute a disability under the SSA.

The first indication of anxiety in the record occurs in a March 3, 1998, entry in Dr. McDonnell's physician's notes. (R. 102). There is no mention of anxiety or depression in the medical record prior to that time. There is no mention of anxiety in Dr. McDonnell's reports

on December 30, 1997 (R. 104-05), and January 29, 1998 (R. 106-07), nor in the report on Dr. Nelson's examination of October 7, 1997. (R. 84-84). There is also no mention of anxiety or depression in Dr. McDonnell's earlier physician's notes. (R. 102, 108, 110, 116-18).

In addition, Schumacher's hearing testimony strongly supports the inference that his depression came about in response to his break-up with a girlfriend (R. 92, 102) and failed attempt to return to work, which ended on January 3, 1998 (R. 62). First, Schumacher testified that his work attempt failed because his "physical limitations" prevented him from meeting the heavy lifting and pace requirements of his former position. (R. 194). Schumacher then testified that he had gone through "a period of anxiety, a period of depression" because he was "feeling very lonely." (R. 198). He further related, "I understand I'm going through changes. We're not getting younger, is one of the expressions that I've been told over and over. . . . I've learned to conquer a lot of the problems that have been put in front of me. One of them I haven't been able to conquer is the aging process . . ." (R. 201). The clear import of these statements is that Schumacher's depression was provoked by the realization that his back problems were chronic in nature, and that he simply would not be able to perform work up to his former capabilities in the future. This response is certainly understandable. But it further substantiates the inference that Schumacher's depression started only after his failed work attempt.

On the other hand, the record is similarly devoid of references to any anxiety or depression after June of 1998. Specifically, Schumacher did not mention anxiety or

depression in the Disability Report he completed on July 22, 1998. (R. 66-71). On the other hand, he listed his social contacts as "church" and "neighbors" (R. 69), both of which he credited with helping him resolve his depression at the hearing. (R. 198). An affective disorder was not mentioned in the report of Dr. Moiduddin on September 9, 1998, even though that examination probed into Schumacher's daily activities and drinking problem. (R. 133-34). Dr. McDonnell completed a Cardiac Report for Schumacher on October 29, 1998, in which he did not list anxiety or depression as among "other impairments or conditions not covered by this questionnaire." (R. 141-45). Finally, Dr. McDonnell's physician's notes do not mention anxiety or depression after May of 1998. (R. 92, 163-65).

Claimant has not identified any evidence in the medical record that establishes he suffered from an affective disorder before January of 1998, or after June of 1998. As a result, his argument that the affective disorder, in combination with the lower back pain, constituted a "disability" within the meaning of the SSA must fail.

## E.    THE ALJ'S FINDING ON CREDIBILITY DOES NOT REQUIRE A REMAND.

Claimant contends that the ALJ's determination on credibility was legally inadequate. Specifically, he notes that in the body of his decision the ALJ writes, "Testimony by the claimant as to the symptoms and their functional effects were evaluated using the criteria of SSR 96-7p and found credible in that they correspond to the medical evidence." (R. 17). However, in his list of findings the ALJ writes, "The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible." (R.20).

In assessing alleged contradictions in the ALJ's determination of credibility, a reviewing court is to apply a commonsensical reading to determine if the finding was supported by substantial evidence in the record as a whole. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). Here, the ALJ's decision indicates that the claims and testimony of Claimant are credible to the extent they are corroborated by the medical record, and that they lack credibility otherwise. The general gist of Claimant's testimony at the administrative hearing was that his back pain would flare up and become significantly debilitating after he engaged in heavy lifting (R. 195-96), but Claimant expressed confidence and enthusiasm in his ability to work for American Airlines in a light to medium work capacity in the immediate future. (R. 199-200). The Claimant was also dismissive of his affective disorder, indicating that it was a transitory bout with depression that has now been resolved. (R. 198, 201). Hence, Claimant's testimony was substantially corroborated by the medical record. However, in applying for DIB, Claimant implicitly claimed to be incapable of doing work of any kind, and this claim was made explicitly in his Request for Reconsideration. (R. 33). The medical record indicates that Claimant was capable of doing light to medium work.

Significantly, Claimant has not pointed out any specific testimony at the administrative hearing that, if taken as credible, would substantially contradict the medical record or mandate a finding of disability. This fact clearly distinguishes this case from *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001). In *Zurawski*, the claimant testified that he could work a mere two to three hours a day, and only then with the aid of medication that caused memory lapses and

concentration deficits. *Id.* at 885. This testimony both contradicted the great weight of the medical evidence in that case, and clearly would have mandated a finding of disability if found credible. In this case, Claimant's testimony was consistent with the medical record and indicated that he was confident and enthusiastic about his ability to perform light to medium work.

Finally, even if the ALJ's determination on credibility was inconsistent, that does not change the fact that the medical evidence fully supports the ALJ's conclusion that Claimant was not disabled.

## V. CONCLUSION

The record supports the ALJ's determination that Claimant was not disabled. The medical evidence fully substantiates the ALJ's determination that "the Claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision." (R. 20). **As a result, Claimant's motion for summary judgment is denied and Defendant's motion for summary judgment is granted and the Commissioner's decision finding Claimant not disabled is affirmed.**

**SO ORDERED THIS 15th DAY OF APRIL, 2002.**

_____

**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

Marcie E. Goldbloom
Frederick J. Daley, Ltd.
727 South Dearborn Street
Suite 613
Chicago, IL 60605

Counsel for Claimant

Jack Donatelli
Assistant U. S. Attorney
219 South Dearborn Street
5th Floor
Chicago, IL 60604

Edward J. Kristof
Assistant Regional Counsel
Social Security Administration
Office of the General Counsel
Region V
200 West Adams Street, 30th Floor
Chicago, IL 60606

Counsel for the Commissioner